Note.—See under (1) 19 C. J. p. 193 §479; 9 R. C. L. p. 470. (2) 19 C. J. p. 125 §331; p. 132; sec 344; anno. L. R. A. 1917B, 433; 9 R. C. L. p. 328; 2 R. C. L. Supp. p. 782; 4 R. C. L. Supp. 602; 5 R. C. L. Supp. p. 509. (3) 19 C. J. p. 195 §481. (4) 19 C. J. p. 340 §787. (5) 19 C. J. p. 192 §477; 9 R. C. L. p. 445; 2 R. C. L. Supp. p. 802; 4 R. C. L. Supp. p. 607; 5 R. C. L. Supp. p. 512.

---

## PERRYMAN v. CITY HOME BUILDERS.

No. 16670—Opinion Filed Feb. 9, 1926.

Rehearing Denied July 20, 1926.

(Syllabus.)

1. **Vendor and Purchaser—Failure of Vendor: to Comply with Contract for "Absolute and Perfect Title in Fee Simple."**

Where A. contracts to furnish B. an abstract of title showing "an absolute and perfect title in fee simple to said lands," and the abstract when presented to B. shows that A. relies for title to said lands on a resale conducted under the resale law enacted by the Legislature at its Session in 1923, and said abstract shows certain delinquent special assessments for paving, grading, and sewers, consisting of grading installments from 1910 to 1919, and paving installments from 1911 to 1920, such abstract fails to show such character of title offered to B. as contemplated by the contract.

2. **Municipal Corporations—Street Improvement Bonds Payable from Special Assessments as Lien on Property.**

Holders of municipal bonds issued for payment of street improvements under Session Laws Oklahoma 1907-08, c. 10, art. 1, payable in ten annual installments from a fund created from assessments against improvement district property, are made a lien on the property, continuing until assessments and interest are paid.

3. **Same—Law at Time of Bond Issue as Part of Contract—Obligation of Contract not Affected by Change in Law.**

. The laws existing at the time of the issuance of municipal bonds and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligations of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law.

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Action by Elizabeth Perryman against the City Home Builders, a corporation. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

A. Carey Hough and Geo. A. Henshaw, for plaintiff in error.

Geo. A. Fitzsimmons, for defendant in error.

Shirk, Danner & Mills, Cochran & Ellison, Allen & Underwood, and G. A. Paul, amicus curaie.

LESTER, J. This is an appeal from the district court of Oklahoma county. The parties will be referred to as they appeared in the court below.

The plaintiff entered into a written contract with the defendant to purchase two town lots in Oklahoma City, which agreement provided that the defendant was to deliver to the plaintiff an abstract showing "an absolute and perfect title in fee simple to said lands"; and that if the abstract failed to disclose such title, plaintiff should be entitled to the immediate return of the $500 constituting the initial payment on the purchase price. The abstract disclosed that the defendant's title rested upon a resale tax deed, dated June 16, 1924, made pursuant to chapter 158 of the Session Laws of Oklahoma of 1923, which provides for the sale of land for delinquent taxes.

The defendant filed a demurrer to the plaintiff's petition, which was by the court sustained. The plaintiff elected to stand upon her petition. Judgment was rendered by the court in favor of the defendant, dismissing plaintiff's petition, from which judgment the plaintiff prosecutes this appeal to reverse the same.

It is conceded by both parties to this action that the sole question to be determined by this court is whether such resale tax deed extinguished certain delinquent assessments against said property for paving, grading, and sewers.

The plaintiff in her petition alleged in part the following:

"There were certain delinquent special assessments for paving, grading, and sewers which constituted a lien or charge upon said lots involved herein, same consisting of grading installments from 1910 to 1919, and paving installments from 1911 to 1920, and sewer installments from 1911 to 1913; that said installments still remained delinquent at the time said written contract was entered into and constitute a breach thereof."

Plaintiff further "alleged that within ten days after said abstract of title was furnished plaintiff, she duly examined the same, iound the defects of title above mentioned, and within the time required brought same to the attention of the defendant; that said defendant did not within five days thereafter, nor at any time since, correct such defect in said title, nor acquire good title to said lands and premises, but same still remains in the same condition as that disclosed by said abstract." The defendant by its demurrer admitted the truthfulness of plaintiff's statement relative to the unpaid assessments against said property, and therefore the sole and only question for this court to determine is whether or not the defendant tendered to the plaintiff an abstract "showing absolute and perfect title in fee simple to the said lands."

It appears that the unpaid assessments against the property which the defendant agreed to sell the plaintiff commenced to run in 1910 and continued thereafter until 1920, and said assessments were made for paving, grading, and sewers. The Legislature of the state of Oklahoma enacted a comprehensive paving law under and by virtue of House Bill No. 231, approved April 17, 1908, and contained in the Session Laws of 1907-08. This law was enacted by virtue of the power granted by the Constitution of the state of Oklahoma, which authorizes assessments for local improvements as contained in section 7 of art. 10, which reads as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements on property benefited thereby, homesteads included, without regard to a cash valuation."

By the provisions of the Act of 1907-08, supra, municipalities were authorized to levy and collect assessments when the procedure therein outlined was complied with, and, among other things, section 5 of the act provided:

"Such special assessments, and each installment thereof, and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the dates of the ordinances levying the same co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts and such liens shall continue until such assessments and interest thereon shall be fully paid."

Thus the paving law remained until 1910, when certain procedure in reference to paving was materially changed, as appears in chapter 10, art. 12, Revised Laws 1910. But as was provided in section 634 of said 1910

law, that portion of the 1907-08 paving act heretofore noted was carried over into the 1910 act, and said section 634 of the 1910 law likewise provided that the assessments and interest thereon were declared to be a lien against the lots so assessed co-equal with the lien of other taxes and prior and superior to all other liens against said lots.

Thereafter a new paving law was enacted in 1923, materially changing the method of procedure by which streets might be paved, but again, by section 23 of said act, chapter 173, Session Laws 1923, such special assessments, and each installment thereof, were declared to be a lien against the lots so assessed co-equal with the lien of other taxes and prior and superior to all other liens against such lots.

The Legislature of the state of Oklahoma, March 10, 1909, by House Bill No. 168, enacted a general revenue and taxation measure for the state of Oklahoma, Session Laws 1909, p. 572, and, among other things, provided for the sale and resale of property against which delinquent taxes might be outstanding and the procedure relative to the execution of tax deeds for delinquent property. At the time of the passage of this act the provisions of the 1907-08 paving law were in full force and effect, and it must be assumed, therefore, that the 1909 revenue law was enacted with full knowledge of the requirements of the 1907-08 paving law, especially so with reference to the equality of special assessments with general taxes.

This general revenue bill, with but slight amendments at subsequent sessions of the Legislature, remained the law of this state until changed by the Act of the Legislature in 1919, at which time the Legislature of this state undertook to amend certain sections of the general revenue law in so far as the same applied to the resale of property purchased by counties at tax sales. By section 5 of the Act of 1919, the county treasurer was required to buy in the property in the name of the chairman of the board of county commissioners, under certain circumstances, and when the same was so bid in and while held by such chairman of the board, the property was not liable for state or county taxes or any special assessment lien, and such property when acquired by the county, under the same provisions of the section, could be sold by the county treasurer upon notice given and the proceeds of such resale to accrue to the common school fund of the county. By section 6 of the Act of 1919, ten days after the sale the county treasurer was required to execute and deliver to the purchaser at resale the

tax deed, which section of the said act further provided as follows:

"Which deed shall expressly cancel and set aside all taxes, penalties and interests and costs previously assessed or existing against said real estate, including paving taxes and outstanding tax sale certificates, and such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land."

At the time of the passage of the Act of 1919, which, as stated, undertook to amend the general revenue act, which prior to that time did not undertake to deal with special assessments, but merely with reference to ad valorem taxes, the paving law found in section 634 of the 1910 statute was in full force and effect. As will be observed, the paving assessments were levied against the lots in question at a time when section 634 of the 1910 statute was in full force and effect, which provided that the lien of the special assessments were co-equal with the lien of general taxes.

Our attention has been called to the case of Ledegar v. Bockoven, County Treasurer, 77 Okla. 58, 185 Pac. 1097. This case holds that the provisions of resale after 1919 were valid in so far as the same undertook to extinguish special assessments delinquent at the time of the resale under the 1919 law.

After the opinion in the case of Ledegar v. Bockoven, County Treasurer, supra, was adopted by this court, thereafter a suit was instituted in the district court of the United States for the Eastern District of Oklahoma, to enjoin the county treasurer of Muskogee county from selling at tax resale certain property against which paving assessments had been levied under the paving law then in effect. That court sustained the complaint of the petitioners and held that the 1919 resale law in part was invalid so far as it affected the rights of the petitioners, who were holders of bonds issued by the city of Muskogee, Okla., to pay the cost of street improvements. This case was appealed to the Circuit Court of Appeals of the Eighth Circuit, and that court affirmed the decision of the United States District Court involving certain sections of the 1919 resale law (Moore, County Treasurer, v. Otis, 275 Fed. 747), and the court in its syllabus, parags. 1 and 3, said:

"1. Holders of municipal bonds issued for payment of street improvements under Sess. Laws Okla. 1907-08, c. 10, art. 1, payable in ten annual installments from a fund created from assessments against improvement district property, made a lien on the property continuing until assessments and interest were paid, held entitled to injunction against the enforcement of Rev. Laws Okla. 1910, 7411, 7412, as amended by House Bill 29 (Laws Okla. 1919, c. 130), approved April 5, 1919, providing in effect that such portions of the moneys received, upon resale by the county of property bid in at previous sale, as represented special assessment taxes, should be appropriated to the county common school fund, and that the issuance of a deed at the resale should have the effect of canceling existing assessments; such change in the law impairing the obligations of the bondholders' contract, and depriving them of valuable contract rights."

"3. The laws existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed, by a change in the law."

The Legislature of the state of Oklahoma, 1923, made an additional change in the 1919 resale law. Section 5, c. 158, Session Laws 1923, provides:

"That section 9745, Compiled Oklahoma Statutes, Annotated, 1921, be and the same is hereby amended to read as follows:

"'On the day said real estate is advertised for resale the county treasurer shall offer same for sale at his office, between the hours of nine o'clock a. m. and four o'clock p. m. and continue said sale thereafter from day to day between the same hours until all of said real estate is sold. Said real estate must be sold at public auction to the highest bidder for cash, provided such bidder offers or bids an amount equal to or greater than the amount of taxes, penalties, interests and costs due on each tract of land; provided, further, that any such bid for vacant lots located in any city or town may be accepted as the highest and best bid, whether said amount is equal to or greater than the amount of taxes, penalties, interests, and costs due thereon. In case no bidder offers or bids the amount due upon any tract of real estate other than the lots located in any city or town, as above provided and offered for sale, the county treasurer shall bid off the same in the name of the county for the amount of taxes, penalties, interest and costs due thereon and shall issue a deed therefor in the name of the chairman of the board of county commissioners and his successors in office for the use and benefit of the county, and thereafter said property shall be exempt from assessment for ad valorem taxes as long as the title is held for the county; provided, that in no event shall the county be liable to the state or any taxing district thereof for any part of the amount for which any property may be sold. Any property acquired by the county under the provisions of this section may be sold by the treasurer at such price as may after notice

by publication be approved by the board of county commissioners. Said notice of publication shall be given by the treasurer in the official county paper and shall embrace a description of the property, the price and to whom proposed to be sold, and stating that he will on a given date to be stated in the notice apply to the board of county commissioners for its approval of said sale and for an order directing that deed for said property be executed by the chairman of said board. The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

As will be observed, that section provides in part:

"Said real estate must be sold at public auction to the highest bidder for cash, provided such bidder offers or bids an amount equal to or greater than the amount of taxes, penalties, interest, and costs due on each tract of land; provided, further, that any such bid for vacant lots located in any city or town may be accepted as the highest and best bid, whether said amount is equal to or greater than the amount of taxes, penalties, interests and costs due thereon."

The record in this case shows that the property in question was vacant lots located in Oklahoma City, Okla., therefore they might be sold without reference to the amount of taxes which had accrued thereon. The state by said act did not undertake to provide any means or procedure to take care of the special assessments or installments due for improvements thereon.

Section 6, c. 158, Session Laws 1923, provides in part as follows:

"And such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land; and 12 months after said deed shall have been filed for record in the county clerk's office, no action shall be commenced to void or set aside said deed, except as to infants idiots and insane persons or other persons under legal disability, who shall have one year after removal of such disability in which to redeem said real estate. Any number of lots or tracts of land may be included in one deed, for which deed the treasurer shall collect from the purchaser."

As will be seen from this section, there is no specific provision made, as in the 1919 resale law, for canceling previous special assessments for improvements. It is insisted by the plaintiff that the Legislature was without authority to provide for the sale of real estate for taxes without making adequate provision for the obligation of the lienholders, whose rights become vested under a prior statute, giving to them liens co-

equal with other taxes. It is provided in section 10, art. 1, Constitution of the United States, that no state shall pass any law impairing the obligation of contracts. Section 15, art. 2, of the Constitution of the state of Oklahoma provides that no law impairing the obligation of contracts shall ever be **passed.**

As heretofore observed, the law in force at the time when the unpaid assessments were levied against the property in this case provided:

"Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the dates of the ordinances levying the same, co-equal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts, and such lien shall continue until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

Under the provisions of the law providing for local improvements, bonds were issued and the assessments made for the purpose of paying the bonds, and the state, having made the assessments on property co-equal with other taxes for the purpose of meeting the bonded obligations, cannot by subsequent legislation strike down the rights of such lienholders without having made due provision for the protection of their liens. They obtained certain rights under and by virtue of the statute which was in force at the time their contracts were entered into. For the law existing at the time of the issuance of the bonds, and under the authority of which they were issued, "entered into and became a part of the contract in such a way that the obligation of the contract could not thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law." Moore, County Treasurer, v. Otis, 275 Fed. 747, supra.

"Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395; Ft. Madison v. Ft. Madison Water Co., 134 Fed. 214, 67 C. C. A. 142; Hicks v. Cleveland, 106 Fed. 459, 45 C. C. A. 429; City of Austin v. Cahill, 99 Tex. 172, 88 S. W. 542, 89 S. W. 552; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Louisiana v. New Orleans, 102 U. S. 203, 206 26 L. Ed. 132; Rolls Co. Court v. U. S., 105 U. S. 733, 26 L. Ed. 1220; Louisiana v. Pilsbury, 105 U. S. 278, 26 L. Ed. 1090; Gibbons v. Hood River Irr. Dist., 66 Or. 208, 133 Pac. 772; Oatman v. Bond, 15 Wis. 22; Barker v. Muchlin, 55 Wash. 411, 104 Pac. 637; Goodale v. Fennell, 27 Ohio St. 426, 22 Am. Rep. 321; Ogden v. Saunders,

12 Wheat. 213-302, 6 L. Ed. 606; McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397; Curran v. State of Arkansas, 15 How. (U. S.) 304, 14 L. Ed. 705; Planters Bank v. Sharp, 6 How. 327, 12 L. Ed. 447; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403; Mobile v. Watson, 116 U. S. 305, 6 Sup. Ct. 398, 29 L. Ed. 620."

In the case of Chapman v. Jocelyn (Cal.) 187 Pac. 962, it is held that:

"A street assessment is a contract and statutes in force at the time prescribing the manner of its enforcement are a part of such contract."

In section 5, c. 158, Session Laws 1923, it is further provided that the proceeds of the sale of any property acquired by the county under the provisions thereof shall accrue to the common school fund of the county. Thus it will be observed that the proceeds arising from the sale of real estate, where there was not an acceptable bidder at the first sale, goes to the common school fund of the county, and the state undertakes to divert all of the proceeds from such sale for the purpose for which the taxes were originally levied. In our judgment, the state not having made adequate provision for the protection of the lienholders, whose rights become vested under a former statute, it could not later destroy the contractual relations under which the rights of the lienholders for public improvements become fixed.

Defendant insists that the sovereignty of the state cannot be embarrassed in the collection of its taxes, and we are not unmindful of the force of this argument, but in the case at bar it is the contractual rights of the lienholders that are involved and not those of taxation. The state by a sovereignty clause could have made the claim of the lienholders subservient to the claim of the state for its taxes, but this it did not elect to do, but, on the other hand, it provided that the lien against lots or tracts of land so assessed, from the date of the ordinances levying the same, should be co-equal with the lien of other taxes.

The objection we find to the resale law of 1919, as amended by chapter 158, Session Laws of 1923, is that the state strikes down the liens for special assessments made on account of local improvements without any provision protecting the equality guaranteed them under and by virtue of a statute existing at the time they entered into a contract for such local improvements. This, we hold, the state cannot do. The rule laid down in the case of Ledegar v. Bockoven, County Treasurer, 77 Okla. 58, 185 Pac. 1097, supra, so far as the same conflicts with this opinion, is thereby overruled.

We find from the record that it was the duty of the defendant to furnish and deliver to plaintiff an abstract showing "an absolute and perfect title in fee simple to the lands involved in this controversy." This, in our judgment, the defendant failed to do.

The demurrer presented by the defendant to the plaintiff's petition should have been by the court overruled. The cause is therefore reversed, with instructions to proceed with said cause in conformity with the views herein expressed.

NICHOLSON, C. J., BRANSON, V. C. J., and HARRISON, PHELPS, CLARK, and RILEY, JJ., concur. HUNT J., dissents.