PRINCE, County Treas., v. YPSILANTI SAVINGS BANK.

No. 18695. Opinion Filed April 30, 1929.

Rehearing Denied Nov. 26, 1929.

Roscoe Cox, County Attorney, and Emery A. Foster, for plaintiff in error.

W. L. Johnson, for defendant in error.

Randell S. Cobb, Asst. Atty. Gen., amicus curiae.

DIFFENDAFFER, C. This is an action brought by defendant in error against Paul Prince, county treasurer, plaintiff in error, to procure a writ of mandamus requiring and directing the defendant, as county treasurer, to reinstate certain paving assessments upon the tax rolls of Lincoln county.

Upon an amended petition filed in the district court an alternative writ was issued. An answer was filed and the cause was tried upon an agreed statement of facts, resulting in a judgment making the alternative writ peremptory. Defendant, after unsuccessful motion for new trial, brings this appeal.

The record discloses that, on the 15th day of January, 1910, the city of Chandler issued certain paving bonds, under authority of the then existing (1907-08) paving law, art. 12, chap. 10, Rev. Laws 1910, which bonds were payable solely from assessments levied against the lots and tracts of land benefited by the paving.

Defendant in error purchased, and at the date of filing this action was the owner of, six of these bonds of the denomination of $500 each, numbered 12 to 17, inclusive. The bonds were due and payable in 1912 and 1913. Payments had been made on each of the bonds, but there remained unpaid on the six bonds, exclusive of interest, some considerable sum, the amount of which is not definitely shown. The agreed statement

of facts, after certain formal statements over which there is no controversy, reads as follows:

"It is further agreed that the assessment against the property was lawfully made and certified according to the law and as provided by the statutes, to the county treasurer of Lincoln county, Okla., upon the lots as set out in the alternative writ and the petition; and the respective lots in said paving district, as set out in the alternative writ, were sold each year from time to time for delinquent taxes including paving taxes then due and delinquent according to the then existing statutes, and that tax deeds were regularly issued from time to time according to the then existing statutes upon sales held by the treasurer according to law, and that in said tax sales the paving taxes were included with the ad valorem taxes, and that upon the sale and issuance of the deeds, the treasurer followed the then statutes and noted on the record that after each lot so sold that the said paving taxes were canceled by deed, and before and since such sales the present county treasurer and his predecessors in office have refused to change the record, have refused to collect the taxes, or to resell for the paving taxes; that the money received from the sales were disbursed in accordance with the then statutes.

"It is hereby agreed that the disbursements of the money were made as shown by the records of the county treasurer's office for the respective years, and the records of the county clerk's office for the respective years, and the city clerk's office for the respective years, and the records of the city treasurer's office for the respective years, and it is further agreed by the parties that the moneys derived from the sale or resale of the lots set up in the amended alternative writ were not applied to the payment of the bonds, but were disbursed by the county treasurer as provided by then existing statutes.

"And it is further agreed by the parties that the bonds 12 to 17, respectively, were due and payable in the year of 1912 and 1913, respectively, and that the issue is raised that plaintiff's action is barred by the statutes of limitation as set out in paragraph 4 of defendant's amended answer to the alternative writ, and that said issue is submitted to the court.

"It is further agreed that the lots, blocks, and parcels of land set out in the amended alternative writ were and are owned by different owners; it is further agreed that the records show that the said lots were all sold for taxes by the county treasurer in the year 1917 and prior thereto, and that for the years 1910, 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918 and 1919, said lots were sold for delinquent taxes, including paving taxes and that in 1917 all of such lots were sold at a resale, all as shown by the county records heretofore agreed upon, and that the county treasurer has issued deeds to the respective lots to the respective purchasers, and that the respective purchasers, or their assigns, are the present holders of the deeds.

"It is further agreed that the present defendant, Paul Prince, went into office on the first Monday in July, 1923, and all the sales were had prior to that time."

The controversy seems to be reduced to a single proposition. Plaintiff in error in his brief says:

"The only point to be decided in the present case is whether a resale under the tax law, as it existed from 1907-8 to 1919, canceled and extinguished the paving tax included with other taxes in the sale."

Defendant in error in its brief says:

"There appears to be but one assignment of error, and but one point to be decided, to wit: Does a resale cancel and extinguish a paving tax (see brief plaintiff in error, page 38)? We accept the challenge and take up the cudgel exactly as laid down, and say that the resale of the land for delinquent taxes did not cancel the paving tax. It is our contention that the paving tax once assessed against the lots becomes a perpetual lien, and can be canceled only when the tax is paid, or the porperty sold with a view to payment on the special assessment, and that any sale of the property by the terms of which the proceeds were not to be applied to the payment of the special assessment is unconstitutional and void."

Defendant in error, in its original brief, contends that this case comes within the law as announced in Perryman v. Home Builders, 121 Okla. 150, 248 Pac. 605, and Moore v. Otis, 275 Fed. 747. In its brief, in reply to the brief of the Attorney General, the defendant in error contends that there is no law in this state for the sale of real estate for special assessments.

The contention of the plaintiff in error is that, under the law as it existed at the time the bonds were issued, if the land did not sell for enough on resale to pay the tax and assessments, the bondholder lost that much of the bond. It must be borne in mind that the resale here under consideration was not under the resale law of 1919 (Session Laws 1919, c. 130, p. 185; sec. 9745, C. O. S. 1921), nor under that act as amended by chapter 158, Session Laws 1923, but was under article 9, chap. 38, Session Laws of 1909, which was in force at the time the bonds were issued, being sections 7409, 7410, and 7411, Revised Laws 1910, which pro-

vided for resale by the county treasurer of lands bid in by the county, but did not specifically provide how the proceeds should be applied. By amendment of section 7411, Rev. Laws 1910, it was provided that:

"The proceeds of sale of any property acquired by the county under the provisions hereof shall accrue to the common school fund of the county."

This provision was contained in the further amendment contained in section 5, chap 158, of the Acts of 1923.

Both parties agree that the laws existing at the time of the issuance of the bonds, and under the authority of which they were issued, entered into and became a part of the contract in such a way that the obligation of the contract should not thereafter be in any way impaired, or its fulfillment in any way hampered or obstructed by a change in the law.

The Attorney General has been asked to file, and has filed, a brief herein amicus curiae, and he agrees that such is the law. Such was the holding of this court in Perryman v. City Home Builders, 121 Okla. 150, ?48 Pac. 605, wherein the amendment as contained in section 5, chap. 130, Acts of 1923, supra, was involved and there held invalid.

In the latter case many authorities are cited in support of this rule, including a number from the United States Supreme Court. An examination of those authorities will disclose the general rule stated, that the bondholder is entitled to the benefit of the laws, under the authority of which the bonds were issued, as they existed at the time the bonds were issued; that that right is a vested right, and may not, by later amendments, be impaired.

Reference to the agreed statement of fact, however, discloses the several installments of the special assessment became delinquent, one installment each year, for the years 1910 to 1919, inclusive, so that the proceedings here under consideration do not come within, nor are they in any way affected by, the 1919 and 1923 amendments above referred to. What then was the law in force at the time the bonds were issued and under which the plaintiff's rights became vested? The applicable provisions of the paving law were enacted in 1907-08, and will be found in sections 4609, 4617, and 4618, C. O. S. 1921, which are as follows:

"4609. Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts; and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant of warranty."

"4617. The assessments provided for and levied under the provisions of this article shall be payable as the several installments become due, together with the interest thereon, to the city clerk of such city, who shall give proper receipts for such payments, and credit the same upon the street assessment record. * * *"

"4618. It shall be the duty of the city clerk, not less than 30 days and not more than 40 days before the maturity of any installment of such assesments, to publish in two successive issues of a daily paper, or in one issue of a weekly newspaper, published and of general circulation in said city, a notice advising the owner of the property affected by such assessment of the date when such installment and interest will be due, and designating the street, streets, or other public places for the improvement of which such assessments have been levied, and that unless the same shall be promptly paid, said installment and interest shall bear interest at the rate of 18 per cent. per annum thereafter until paid, and proceedings taken according to law to collect said installment and interest; and it shall be the duty of the city clerk, promptly after the date of maturity of any such installment and interest, and on or before the 15th day of September in each year, to certify said installment and interest then due to the county treasurer of the county in which the city is located, which installment and interest shall be by said county treasurer placed upon the next delinquent tax list prepared by the treasurer of said county, and collected as other delinquent taxes are collected, and thereupon paid to the city treasurer for disbursement in accordance with the provisions of this article. Provided, that failure of the city clerk to publish said notice of the maturity of any installment and interest shall in no wise affect the validity of the proceedings to collect the same under the provisions of this section. All payments to the city treasurer on account of such assessments shall be certified to the clerk to be credited on the street assessment record."

Section 4609, it will be observed, makes the assessments a lien co-equal with, not superior to, the lien for other taxes.

Section 4618 provides that if any installment be not paid on or before the 15th day of September in the year it falls due, the city clerk shall promptly certify said in-

stallment and the interest to the county treasurer of the county, which installment and interest shall be by such county treasurer placed upon the next delinquent tax list prepared by the treasurer of said county, and collected as other taxes are collected, and thereupon paid to the city treasurer for disbursement in accordance with the provisions of this article. How then was the county treasurer to collect said assessments as other taxes were collected?

Section 7396, Revised Laws 1910 (sec. 6, art. 9, chap. 38, Session Laws 1909), then in force, provided:

"Sec. 6. The treasurer shall, in all cases where taxes are a lien upon real property and unpaid on the first day of May, proceed to advertise and sell such real estate for such taxes and cost as hereinafter provided, and shall not be bound before so doing to proceed to collect by sale all personal taxes on personal property which are by this act made a lien on realty, but shall include such personal tax with that due on the realty, and shall sell the realty for all of said taxes."

Section 7 of the same article provided for notice of sale by the county treasurer, and section 8 provided:

"On the first Monday in June in each year, between the hours of nine o'clock a. m. and four o'clock p. m., and from day to day thereafter between the same hours, until completed, the treasurer shall offer at public sale at his office where by law the taxes are made payable, all lands, town lots or other real property, which shall be liable for taxes of any description for the preceding year, or years, and which shall remain due and unpaid."

This section was amended, effective June 17, 1910, changing the date of sale from first Monday in May to first Monday in November.

Section 16 of the same chapter provides:

"The county treasurer of each county within the state is hereby authorized at all tax sales hereafter made under the laws of this state, in case there are no other bidders offering the amount due, to bid off all or any real estate offered at said sale for the amount of taxes, penalty, interest, and costs due and unpaid thereon, in the name of the county in which the sale takes place, the said county acquiring all the rights, both legal and equitable, that any other purchaser could acquire by reason of said purchase."

It will be observed that this section does not require the payment of any money by the county treasurer.

Section 17 provides for redemption by the owner, or any person having a legal or equitable interest therein, and section 18 provides that if any person is desirous of purchasing the interest of the county in any land bid in by the county treasurer, he may do so by paying to the county treasurer the amount of taxes, penalty, and interest, and cost of sale and transfer, and it is made the duty of the county treasurer to assign the tax sale certificate, which assignment and transfer conveys to the purchaser all the rights of the county, both legal and equitable in and to the real estate, as much so as if he had been the original purchaser at the tax sale. Section 19 of the act provides:

"* * * Whenever any real estate that may have been or shall hereafter be sold for any taxes due thereon, that have been or shall hereafter be bought in by any county for such taxes, are or hereafter shall be unredeemed for two years from date of sale, and no person shall offer to purchase the same for the taxes, penalties, and costs due thereon, the county treasurer of the county, where such real estate is situated, shall proceed to advertise and sell such real estate at public auction as herein provided."

Provision is then made for notice of sale, etc., and the section then further provides:

"On the day such real estate is advertised for sale the treasurer shall, between the hours of one o'clock and four o'clock p. m., at the treasurer's office, where by law the taxes are made payable, sell at public auction for cash to the highest bidder each tract or parcel of said real estate, and in case said real estate is not sold for want of bidders, he may adjourn said sale from day to day for a period of not exceeding three days."

This section was in force when the bonds were issued, and it was thereunder that the resale of 1917 mentioned in the agreed statement of facts was had. It will be noticed that this section did not provide that the proceeds of the sale should accrue to the common school funds, nor did it provide for the cancellation of all taxes, penalties, and interest assessed or existing against the real estate, including paving taxes and outstanding tax sale certificates. These provisions were first placed in the resale law by the amendment of 1919, and it was the provision therein that the proceeds of the resale would accrue to the common school fund of the county that was held in Moore v. Otis, supra, to render the amendment of 1919 to that extent invalid.

By chapter 212, Acts of 1923, it was provided, in effect, that the county treasurer might, where the tax charges, including ad valorem and special assessments, against

any tract of land should exceed in amount the fair cash value of such tract or parcel, and where either ad valorem or special assessments were delinquent for more than three years, bring an action to foreclose the lien, and that such property might be sold and the proceeds, less costs, applied: First, to the payment of the special assessments, and second, to the payment of ad valorem taxes, and the surplus, if any, to be paid to the owner or other lienholders in order of seniority; and providing, further, that, after the confirmation of the sale therein authorized, the property involved should be free and clear of all ad valorem taxes and special assessment liens of any kind or character. In Nelson v. Pitts, Co. Treas., 126 Okla. 191, 259 Pac. 533, the foregoing act was held invalid for two reasons: First, that by its terms it provided that the land might be sold after the first, second, and third installments became due and remained unpaid, and thereby extinguish and cancel the remaining installments of the assessment; and second, by providing the priority in favor of the special assessments over the ad valorem taxes, it had the effect of abridging the power of the state to levy and collect taxes, and therefore was violative of section 5, art. 10, of the Constitution; and, further, had the effect of extinguishing obligations due the state in violation of section 53, art. 5, of the Constitution.

It will thus be seen that this court has held that the lien for special assessments may be made co-equal with the lien for ad valorem taxes, but may not be made superior thereto.

We think, under the law as it existed when the bonds in question were issued, the lien created by the special assessments was co-equal with the lien for general ad valorem taxes. The question then arises: Did the county treasurer have power to advertise and sell the several tracts and parcels of land for the general ad valorem taxes, together with the special assessments delinquent and certified to him by the city clerk? If not, then there is no authority of law for the sale for delinquent special assessments. In Glasser et al. v. Goltry, 136 Okla. 182, 276 Pac. 738, it was held:

"The statutes of this state (section 4618, C. O. S. 1921, and section 28, Sess. L. 1923, p. 278) provide a full and comprehensive system by which delinquent installments, interest, and penalties on special assessments for street improvements may be collected by a sale of such real estate by the county treasurer, the collecting agency.

Such method, being the only one authorized by the statutes, is exclusive for the enforcement of such special assessment lien, and a foreclosure of such liens in the district courts of the state is unauthorized."

It was there contended, as here, that the county treasurer was without power to sell land for special assessments, but in the body of the opinion it is said:

"A reference to section 4618, C. O. S. 1921, and section 28, ch. 173, Sess. L. 1923, discloses that the statute provides a full, complete, and compresensive system by which delinquent installments, penalties, and interest on special assessments for street improvements may be collected."

And further:

"We are of the opinion that in this case there was a plain, specific and adequate remedy at law by the sale of the property against which the lien was claimed by the county treasurer, and the collection of the delinquent assessments 'as other delinquent taxes are collected,' and, for that reason, the district court of Garfield county had no jurisdiction to decree a foreclosure of the assessment lien."

In City of Sapulpa v. Land, 101 Okla. 22, 223 Pac. 640, it was held:

"The statutes of this state, sections 9730 to 9749, inclusive, Comp. Stat. 1921, provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer, the collecting agency. Such method, being the only one authorized by the statutes, is exclusive for the enforcement of such tax liens," including special assessment for street improvements, "and a foreclosure of such liens in the district courts of this state is unauthorized."

In those cases, the right to resort to a court of equity to foreclose the lien of special assessments was involved, but it was there held that the right did not exist because of the plain, specific, and adequate remedy at law by sale of the property by the county treasurer, under the power given to collect "as other delinquent taxes are collected."

In 44 C. J. p. 827, the following rule is stated:

"Where the statutes so provide, assessments remaining unpaid after a specified time may be collected in the same manner as delinquent taxes generally."

A number of cases are cited in support of the text.

It is now suggested that the law providing

for sale and resale, as it existed prior to 1919, is invalid in so far as it provides for a resale of the property, because the law does not direct the county treasurer in the disposition of the proceeds of the sale.

We think a sufficient reply to this is that the law is so plain that the county treasurer needed no specific direction. We have seen that the lien for special assessments was made co-equal with, but not superior to, the lien for general ad valorem taxes. When the county treasurer was given power to collect "as other delinquent taxes are collected," he was given power to sell as for other delinquent taxes. The county treasurer was not only given power to collect as other delinquent taxes are collected, but was directed thereupon to pay the same to the city treasurer for disbursement, in accordance with the paving law. Section 643, Rev. Laws 1910.

There would be no difficulty whatever if at the first sale some person bid an amount sufficient to cover the costs and all the ad valorem taxes and special assessments involved in the sale. The county treasurer would know at once what to do with the money. He would apportion that part of the money representing the ad valorem taxes to the several taxing divisions and subdivisions entitled to the same, including the state. He would know, without directions, to pay that part representing the special assessments included in the sale over to the city treasurer to be by him disbursed in accordance with the law relative to street improvements, under and by virtue of which the bonds were issued. And here it may be said that, for all that appears in the agreed statement of facts, this was done. The agreement is:

"That the moneys received from the sales were disbursed in accordance with the then existing statutes."

It is not shown that any resales were had after the year 1917, but it is agreed that sales were held for the other years and deeds issued. True, the agreed statement further shows that the money was never applied to the payment of the bonds, but it is agreed that, so far as the then county treasurer is concerned, he complied with the law. As to the proceeds from the resale held in 1917, the record is silent as to whether the proceeds were sufficient to cover both the ad valorem taxes and the special assessments included in the sale. Assuming that they were not, then it became the clear duty of the county treasurer to prorate the

proceeds between the ad valorem tax lien and the special assessment lien according to the amount due on each. He was charged with the knowledge that these liens were co-equal, that is, on a parity; that one was not superior to nor entitled to a preference over the other. Under the agreement, we are entitled to assume that he did so. If he refused to prorate the proceeds, it is clear that any person interested, including the plaintiff, if it was then the owner of the bonds, had the right to compel him to perform this plain duty by mandamus.

We are of the opinion that the sales and resale were within the power of the county treasurer, and, under the agreed statement of facts, were in all respects regular and valid.

It is contended by defendant in error that because the law says that the lien for the special assessments should continue as to unpaid installments and interest until such assessment shall be fully paid, the lien cannot be extinguished by tax sale and resale. This contention cannot be upheld. To do so would, in effect, say that the lien or special assessment shall not be co-equal with, but shall be superior to, the lien of other taxes.

There are authorities from other states which hold that the sale to the county extinguished the lien of the special assessment. In 44 C. J. 805, it is said:

"Sale of the property to which the lien attaches for the purpose of satisfying the lien extinguishes it, regardless of whether the purchaser of the property is a private individual or the municipality itself."

In Smith v. Vandyke et al., 17 Wis. 208, it was held:

"When a lot in the city of Milwaukee had been duly sold, either to the city or to an individual purchaser, for unpaid taxes, including the amount of a special assessment for which a street commissioner's certificate has been issued under the provisions of the city charter, the holder of such certificate ceases to have a lien for the amount thereof upon the lot."

See, also, Smith v. Luddington, 17 Wis. 334; O'Connell v. Sanford, 256 Ill. 62, 99 N. E. 885.

By section 9724, C. O. S. 1921, taxes upon real estate are made a perpetual lien, but no one contends that this lien may not be extinguished by foreclosure by tax sale and resale as provided by law.

No attempt has been made to cancel or ex-

tinguish the lien for installments not yet due, by any sale or resale. Each year the property was sold for the delinquent ad valorem taxes and special assessments certified to the county treasurer for that year. In each sale, then, the property was sold subject to the special assessments to become due thereafter. In this respect the transaction is entirely different from the resales involved in Perryman v. City Home Builders, supra, and Moore v. Otis, supra, and the law under which the sales were had is free from the provisions which rendered the sales invalid in those cases. It appears that defendant in error has had the benefit of the law which made its lien co-equal with the lien of other taxes, and is entitled to no greater benefit.

It follows that the predecessor in office of plaintiff in error had performed his full duty, and in accordance with law, and the present county treasurer was under no legal duty to reinstate the special assessments upon the tax rolls of Lincoln county.

The judgment should be reversed, and the cause remanded, with directions to dismiss the petition.

TEEHEE, JEFFREY, FOSTER, and HERR, Commissioners, concur.

By the Court: It is so ordered.