### McGRATH v. OKLAHOMA CITY.

No. 20578. Opinion Filed Feb. 16, 1932.

Rehearing Denied March 29, 1932.

H. A. Wilkinson, for plaintiff in error.

Malcolm W. McKenzie, Municipal Counselor, and G. A. Paul, for defendant in error.

Geo. M. Callihan, Co. Atty., and I. L. Harris, Asst. Co. Atty., amici curiae.

ANDREWS, J. This is an appeal from a judgment of the district court of Oklahoma county in favor of the defendant in error, the defendant in the trial court, against the plaintiff in error, the plaintiff in the trial court. The parties hereinafter will be referred to as they appeared in the trial court. The action was brought to cancel paving assessments against the property of the plaintiff. The cause was tried to the court. At the conclusion of the plaintiff's evidence, the defendant demurred thereto. That demurrer was sustained and judgment was rendered for the defendant, from which judgment the plaintiff appealed to this court.

The litigation arose out of the facts hereinafter stated. A portion of Classen boulevard from Thirty-Seventh street to Fiftieth street in Oklahoma City was paved in 1911; assessments were levied against the several tracts and lots therein to pay the cost of the improvement; the defendant issued street improvement bonds therefor, and those bonds were sold in the regular course of business. Included in the district was the property involved herein. That property was purchased by the plaintiff in 1924, at a tax resale held pursuant to the provisions of chapter 158, Session Laws 1923. At that time the assessments were unpaid and the bonds had matured. In October, 1928, under the authority of House Bill No. 255, chapter 93, Session Laws 1927, known as the "Refunding Paving Law," the defendant refunded the indebtedness evidenced by the improvement bonds, canceled them, reassessed the property, and issued new bonds in lieu thereof. After that assessing ordinance was

passed, the plaintiff instituted this suit to enjoin the defendant from reassessing his property. Therein he alleged irregularity and partiality in the reassessing of the property and that his resale tax deed canceled and set aside all delinquent taxes, penalties, interest, and costs previously assessed or existing against the property purchased, and vested in him an absolute and perfect title in fee simple to the property. By the reassessing ordinance, the interest and penalties on the prior bonds were canceled and extinguished and the original assessment was increased about 35 per cent. The amount of the reassessment was approximately two per cent. per annum in excess of the original assessment, but it was less than the amount of the original assessment with the interest and penalties accrued thereon.

The plaintiff contends that the resale tax deed conveyed the real estate to him and vested in him an absolute and perfect title. The question is thus presented of whether or not the resale tax deed canceled the debt evidenced by the improvement bonds which had been issued, and which, with interest and penalties, were past due at the time of the resale.

In order to understand more fully the rights and remedies existing under the special improvement or paving law and the law authorizing a sale of real estate for nonpayment of taxes, we will review some of the former legislative enactments.

The first paving law enacted appears as article 6, ch. 12, Wilson's Revised and Annotated Statutes of Oklahoma 1903 (sections 443 to 453, inclusive). It contained a provision relating to liens as follows:

"* * * The said assessments shall be a charge and lien against the property upon which assessed, until fully discharged. * * *" Section 450, supra.

That act remained in force until the Legislature enacted House Bill No. 231, approved April 17, 1908 (Laws 1907-08, c. 10). By section 5 of art. 1 of that act it was provided:

"Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the dates of the ordinances levying the same, coequal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts, and such lien shall continue until such assessments and interest thereon shall be fully paid. * * *"

The revisers changed the section, and it appears as section 634, R. L. 1910, as follows:

"Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts; and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

The section was carried forward and appears as section 4609, C. O. S. 1921.

The assessment in the instant case was made and the bonds were issued in 1911, prior to the time of the taking effect of the revision of 1910, and the law applicable thereto is the 1907-08 act, supra. As held in Prince, Co. Treas., v. Ypsilanti Savings Bank, 140 Okla. 131, 282 P. 282, the law existing at the time of the issuance of the bonds, and under the authority of which they were issued, entered into and became a part of the contract in such a way that the obligations of the contract cannot thereafter be in any way impaired or its fulfillment hampered or obstructed by a change in the law. It will be noted that under that law each and every installment of special assessments and the interest thereon are declared to be a lien, co-equal with the lien of other taxes. The authority of the Legislature to provide for such a lien and to make it co-equal with other taxes is section 7, art. 10, of the Constitution. Since the Legislature has authority to and has provided for equality of such liens, this court is without authority to destroy such equality.

In considering the law existing at the time of the issuance of the bonds, and under the authority of which they were issued, due regard must be given to those parts of the 1907-08 act, supra, providing that one-tenth in amount thereof, with the interest on the whole, shall be payable annually for a period of ten years, and that:

"* * * It shall be the duty of the city clerk, promptly after the date of maturity of any such installment of assessment and interest, and on or before the 15th day of September in each year, to certify said installment and interest then due to the county treasurer of the county in which said city is located, which installment of assessment and interest shall be by said county treasurer placed upon the delinquent tax list of said county for the current year and collected as other delinquent taxes are collected. and thereupon pay to the city treasurer for disbursement in accordance with the provisions of this act. * * *" Sec. 6.

There was some revision in the language by the revisers of the 1910 statutes which is not necessary to be considered herein. The matter quoted appears therein as a part of section 643 thereof. It was carried forward as a part of section 4618, C. O. S. 1921. It will be noted that the procedure for the collection is that provided for the collection of other delinquent taxes, and, as held by this court in Prince, Co. Treas., v. Ypsilanti Savings Bank, supra, the statutes of this state provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer, and that method is exclusive for the enforcement of special assessments for street improvements. To the same effect are the decisions in Glasser v. Goltry, 136 Okla. 182, 276 P. 738, and City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640. We know of no decision of this court to the contrary, and we consider that question as having been definitely decided by this court.

Provision for the resale of property for ad valorem taxes was included in Wilson's Revised and Annotated Statutes of 1903 by the inclusion in section 121 (6033) thereof of the provisions of the Act of March 12, 1897 (Laws 1897, c. 32, art. 13) amending section 21 (5663) of article 10, ch. 70, Statutes of Oklahoma 1893. By that provision, after a resale, the county treasurer was required to execute to the purchaser at such sale, his heirs, or assigns, a deed of conveyance which shall vest in the grantee an absolute estate in fee simple in such real estate. The Legislature, by House Bill No. 168, ch. 38, approved March 10, 1909, enacted a general revenue and taxation act, which provided for the sale and resale of property for nonpayment of taxes. Section 19, art. 9, ch. 38, Session Laws 1909, changed the 1897 act, supra, and provided for a sale after two years rather than after three years, as had been provided by that act. There was omitted from the 1909 act the provision for the issuance of a resale tax deed. The 1909 act repealed all laws and parts of laws in conflict therewith, but there was nothing therein in conflict with the provision in the 1897 act for the issuance of a resale tax deed, and we hold that that provision was not repealed. The 1909 act, supra, was in force and effect at the time of the issuance of the bonds and was the law existing and under the authority of which the bonds were issued. At that time the provisions of the 1907-08 paving act, supra, were in full force and effect. The two acts are supplementary of each other. They are in no wise in conflict with each other, and they must be construed together and the provisions of each must be applied to the bonds in question. When construed together they provide a full and comprehensive system for the enforcement of special assessments, as held in Prince, Co. Treas., v. Ypsilanti Savings Bank, supra:

"As to special assessments levied under and by virtue of art. 12, chap. 10, Revised Laws 1910, when such assessments become delinquent and are certified to the county treasurer, and by him placed upon the delinquent tax list, they are to be collected as other taxes, and the lots or tracts against which assessments were levied may be sold by the county treasurer for such delinquent special assessments, together with other delinquent taxes; and if there be no bidder at such sale, the county treasurer may bid in such land in the name of the county."

"Section 7409, Revised Laws 1910, authorized the county treasurer to sell to the highest bidder any real estate that had been bought in by the county and remained unredeemed for two years, and in such case, where the original sale was for both ad valorem taxes and special assessments, it is the duty of the county treasurer to distribute the proceeds ratably between the ad valorem tax lien and the special assessment lien."

"In such case where land is regularly sold for delinquent ad valorem taxes, together with delinquent special assessments, such sale extinguishes the lien for both ad valorem taxes and the installment of the special assessment included in the sale, and does not affect the lien of special assessments not then due."

With certain changes, immaterial to this discussion, the general revenue law of 1909, supra, remained the law of this state until the adoption of chapter 130, Session Laws 1919, at which time a change was made to provide that a resale tax deed should "cancel and set aside all taxes, penalties, and interest and costs previously assessed or existing against said real estate, including paving taxes and outstanding tax sale certificates. * * *" Sec. 6. That section was considered by this court in Ledegar v. Bockoven, Co. Treas., 77 Okla. 58, 185 P. 1097. It was therein held that the tax deed "cancels and sets aside all taxes, which includes ad valorem and paving taxes delinquent at the time the sale was made at which the property was bid off by the county treasurer in the name of the county." The court refused to construe the act to cancel and set aside unmatured installments of paving assessments. On October 4, 1921, the Circuit Court of Appeals for the Eighth Circuit, in the case of Moore, Co. Treas., v. Otis, 275 Fed. 747, with the case of Ledegar v. Bockoven, supra, and the 1919 act, supra, before it and fully considered, expressly repudiated

the rule of law announced therein, and held:

"The laws existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed, by a change in the law."

There can be no question as to the correctness of that statement of the law. However, in our opinion, it has no application to the facts in this case, for herein we are not considering any material change in the law existing at the time of the issuance of the bonds in question. The 1919 act, supra, is not before us for consideration. The Legislature at the 1923 Session thereof, by House Bill No. 123, approved April 9, 1923 (Laws 1923, c. 158) amended the 1919 act, supra, by striking therefrom all reference to the extinguishment of the ilen created by paving assessments.

On the 9th day of February, 1926, this court promulgated its opinion in Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605, wherein this court held:

"Holders of municipal bonds issued for payment of street improvements under Session Laws Oklahoma 1907-08, c. 10, art. 1, payable in ten annual installments from a fund created from assessments against improvement district property. have a lien on the property, continuing until assessments and interest are paid."

That decision was based on the decision in Moore, Co. Treas., v. Otis, supra, and by it the rule stated in that case was made to apply to the 1923 act, supra. The second syllabus in that decision is to the effect that a lien created for street improvements continues until the assessments and interest are paid, notwithstanding the fact that the property has been offered for sale and sold by the county treasurer in satisfaction of that lien. In other words, under the rule stated, though the ten installments had matured, and though the property had been sold ten times by the county treasurer for failure to pay the installments, and though the purchasers had paid the amount bid at the sales, there would still be a lien on the property for any unpaid portion of the assessment. To hold to that effect would be to hold that a lien continues after a sale is made for the purpose of foreclosing the lien. Such is not the law. The rule quoted from Perryman v. City Home Builders, supra, was correct under the facts shown by the record in that case, but it is too broad and is hereby limited and modified as herein stated. Such was the effect of the decision in Prince, Co. Treas., v. Ypsilanti Savings Bank, supra. The

rule stated in the Perryman Case, that, under the provisions of section 10, art. 1 of the Constitution of the United States, no state shall pass any law impairing the obligation of contract, and that such action is prohibited by section 15, art. 2 of the Constitution of this state, is correct, but herein there is no impairment of contract. While the law in existence at the time of the issuance of the bonds provided that the lien therefor should be co-equal with the lien of other taxes, it also provided that the property should be sold for nonpayment of installments in the manner provided for the sale of property for ad valorem taxes. The purchasers of the bonds acquired certain rights under and by virtue of the statutes which were in force at the time the contracts were entered into, but they acquired those rights and none other. They did not acquire a right to have their lien after they had caused the property to be sold in satisfaction of their lien. In the opinion, it is stated "that the proceeds arising from the sale of real estate, where there was not an acceptable bidder at the first sale, goes to the common school fund of the county, and the state undertakes to divert all of the proceeds from such sale from the purpose of which the taxes were originally levied." The language used is susceptible of two constructions. If it was intended to mean "no acceptable bidder at the resale," it would be in accordance with the statute, but if it was intended to mean "no acceptable bidder at the first sale," as therein stated, then it would be contrary to the statute, for the provision with reference to the proceeds of the sale going to the common school fund of the county applies only to the proceeds of a sale made by the county treasurer with the approval of the county commissioners after no one has offered to purchase the same at the resale and after the county treasurer has purchased the property at the resale. No such sale is involved in this case. The proceeds of the sale of property at a resale must be used for the purpose for which the tax was levied, for, by the provisions of section 19, art. 10 of the Constitution, no tax levied and collected for one purpose shall ever be devoted to another purpose. Had the Legislature intended to divert the proceeds of a resale from the purpose for which that tax was levied to some other purpose, the provision would have been unconstitutional and void. However, we find no such provision in the 1923 act, supra. In the body of the opinion it is stated:

"The state strikes down the liens for special assessments made on account of local improvements without any provision protecting the equality guaranteed them under and by virtue of a statute existing at the

time they entered into a contract for such local improvements."

We do not think that that is a correct statement of the facts. The state does not strike down the lien for special assessments made on account of local improvements without any provision protecting the equality guaranteed them under and by virtue of a statute existing at the time they entered into a contract for such local improvements. At the time the contract in question was entered into, there was no guarantee by the state of equality other than that the property would be offered for sale and sold by the county treasurer in the manner provided for the sale of property for non-payment of ad valorem taxes. No rights have been taken from them by any legislation and the rights as they exist now, under the 1923 act, supra, are without material change from the rights as they existed under the 1909 act, supra. The special assessments involved in Prince, Co. Treas., v. Ypsilanti Savings Bank, supra, were made in 1910. In the instant case, they appear to have been made in 1911. They were each made under the provisions of the 1907-08 act, supra. No provision was made for the payment of either except from the assessments levied against the lots and tracts of land benefited by the paving. The sale of the property involved in Prince, Co. Treas., v. Ypsilanti Savings Bank, supra, occurred in 1917. In the instant case it occurred in 1914. By section 5, art. 10, of the Constitution, it is provided:

"The power of taxation shall never be surrendered, suspended, or contracted away."

The ultimate rights under a lien for improvements and a lien for taxes are identical. What is that right? To have the property sold by the county treasurer at public sale and thereby recover as much as possible of the amount due. The defendant contends that there is no provision of law requiring the county treasurer to pay to the holder of a special assessment lien any portion of the proceeds of the sale of real estate. Our answer to that is, that there is as much provision for that purpose now as there was for that purpose at the time of the making of the assessments and the issuance of the bonds. The fact that no such provision exists in no way changes the rights of the defendant. In our opinion, there is nothing in Nelson v. Pitts, 126 Okla. 191, 259 P. 533, to the contrary.

We therefore hold that a sale of real estate by the county treasurer under the provisions of the 1923 act, supra, in satisfaction of an installment of an assessment made for paving purposes, under the provisions of the 1907-08 paving act, supra, and the 1909 general revenue act, supra, extinguishes the lien to the amount of the delinquent assessment for which the sale was made, and that the remedy of the bondholder is to procure his proportionate share of the proceeds of the sale from the county treasurer.

The extinguishment of a paving lien does not arise by virtue of the terms of the 1923 act, supra. There is nothing therein with reference thereto. Such a lien is discharged pro tanto by a sale for nonpayment of a delinquent installment of an assessment for paving purposes, in the absence of any statute to that effect, by reason of the nature of such a transaction. If the sale is alone for delinquent ad valorem taxes, a lien for those taxes is discharged by the sale and a lien for paving purposes is not affected thereby. If the sale is alone for a delinquent installment of an assessment for paving purposes, a lien for the delinquent installment for which the sale is made is discharged by the sale and a lien for ad valorem taxes is not affected thereby. If the sale is for delinquent ad valorem taxes and a delinquent installment of an assessment for paving purposes, both liens are discharged by the sale. In no event does a sale for a delinquent installment of an assessment for paving purposes discharge the lien for paving purposes securing the payment of other delinquent installments of an assessment or of installments of an assessment which are not delinquent.

Under that rule, we must examine the record to determine whether or not the lien for the assessment for paving purposes has been discharged. We find that the plaintiff relies on a resale tax deed as a basis of his title. We are unable to determine from the resale tax deed or the record whether the sale of the property was for delinquent ad valorem taxes or for a delinquent installment of an assessment for paving purposes. The burden was upon the plaintiff to show that the paving lien had been extinguished. The evidence of the plaintiff does not show an extinguishment thereof.

The plaintiff contends that the contract entered into by the defendant for the refunding of the bonds was illegal because I. B. Levy, the party with whom the refunding contract was made, was not the owner of all of the bonds. He further contends that the ordinance ratifying the contract for the refunding of the bonds was null and void because it was passed as an emergency ordinance in violation of the city charter of the defendant Oklahoma City. The law under which the reassessment was made is House

Bill No. 255, chapter 93, Session Laws of 1927.

It appears that the Oklahoma Railway Company owned $19,000 of the bonds which were irregularly issued and which were canceled in pursuance of a resolution passed by the city council of the city of Oklahoma City on April 17, 1928, and the fact that these bonds were not delivered or taken up until the 25th day of April, 1928, the day after the resolution and refunding contract had been entered into between the defendant and Levy would be only a technical violation of the law. Even though the actual delivery of the bonds by the Oklahoma Railway Company was not made until April 25, 1928, the delivery at that time would date back to April 17, 1928, the date when the defendant city council authorized the cancellation of the same.

The plaintiff contends that the reassessments were approximately 35 per cent. in excess of the original assessment, and complains that the Oklahoma Railway Company which was allowed to surrender $19,000 of its bonds, and the payment of $49.10 cash, canceled the original assessment in like amount against the property of the Oklahoma Railway Company and that it will not have to pay any part of the extra assessment. This was a matter about which the plaintiff could not complain, not being able to show that the reassessment against his property exceeded the amount of the original assessment, plus the interest and penalty accrued. Neither the plaintiff nor the prior owner ever paid any of the assessments against this property under consideration, and all bonds had matured and interest and penalties accrued, when under the provisions of the act of 1927, supra, reassessments were caused to be made against the property.

The plaintiff further contends that the ordinance ratifying the contract for the refunding of the bonds was null and void, because it was adopted at the same meeting it was introduced and as an emergency ordinance. That contention is without merit. Its immediate passage violates no provision of the defendant's city charter or any part of section 58, art. 5, of the Constitution of Oklahoma. Section 4, art. 5, of the defendant's city charter provides:

"Ordinances—When to Be Adopted. No ordinance shall be passed on the day of its introduction before the board of commissioners, but all ordinances, after being introduced, shall lie over for at least one week before being finally voted on and adopted. But this shall not apply to emergency ordinances."

Section 5, article 5, of the city charter provides:

"Emergency Ordinances.—The board of commissioners, by a vote of four members, may pass an emergency ordinance when the public peace, the public health, or the public safety of the city or the inhabitants thereof shall, in the judgment of the board, demand it."

The ordinance was not one levying a tax or charge against property, but one ratifying a contract between the defendant and the bondholder. It in no way is in conflict with the holding in City of Oklahoma City v. Shields, 22 Okla. 265, 100 P. 559, cited by the plaintiff.

The judgment of the trial court is in all things affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. CULLISON, J., absent.