## SMITH vs. LUDINGTON and others.

*Smith vs. Vandyke et al.*, ante, p. 208, followed.

So far as chapter 388, Private Laws of 1856, and chapter 347, Private Laws of 1862, were designed to give the holder of a sreet commissioner's certificate of work done under contract with the city of Milwaukee in improving the street or side-walk in front of any lot in said city, the right to enforce the lien of such certificate by foreclosure and sale of the lot, after a special tax for the amount of such certificate has been assessed against the property, and the property sold—whether to the city or any other purchaser,—they are invalid.

It is not competent for the legislature to provide for selling the same land twice to enforce the same charge upon it.

APPEAL from the Circuit Court for *Milwaukee* County.

This case was similar to that of *Smith vs. Vandyke and others, adm'rs of Rogers*, ante, p. 208, except that in this case the court below refused to receive any evidence, and dismissed the complaint, on the ground that it did not state a cause of action. From this decision, and a judgment in favor of the defendants for costs, the plaintiff appealed.

*Butler & Cottrill*, for appellant:

[The following is a condensed statement of the argument filed by Messrs. *Butler & Cottrill*, on their motion for a rehearing in *Smith vs. Vandyke and others*, and referred to in the opinion of the court in the present case.]

The court gives as a reason for its decision, that "the lot cannot be twice legally sold to enforce the payment of the same charge upon it." So far as the first "sale" implies and includes payment of the amount bid, and therefore satisfaction of the charge for which the sale is made, this is unquestionably correct. Where an individual has bid off the lot on the tax

sale, and paid in the amount of his bid, the holder of the street commissioner's certificate would only have the right to take the amount already collected for him, and could not institute proceedings to collect it over again. But it is error, we conceive, to assume that the legal effect of the sale is the same, where the city becomes the purchaser. It is true that "the city bid in pursuance of a law authorizing it." It may also be correct to say that "that law was passed for the express purpose of preventing a failure of tax sales for want of bidders, and to make the proceedings effectual to divest the title of the owner and collect the tax." But it by no means follows that "the sale to the city therefore passed to it the same rights which any other purchaser would have had to the land." We also admit that the city may give to its assignee of the certificate of sale the same rights as if he had bid at the sale. But those rights did not pass to the city originally by the sale, and then to the assignee by assignment; they vest in the assignee *by relation* merely, under the provisions of law. The city never had them. The further statement in the opinion that the certificate of sale and the right of the city to sell it are substituted, as a security for the tax, in place of any new proceeding against the land, seems at total variance with the only ground upon which, if at all, the decision can be sustained; i. e., that the lien upon the land has been satisfied by the sale. What is, in fact, the effect of a sale when the property is struck off to the city? By sec. 16, chap. 8 of the charter, it is provided that "if at any sale of real or personal estate for taxes or assessments, no bid shall be made for any parcel of land, or any goods or chattels, the same shall be struck off to the city; and thereupon the city shall receive in its corporate name, a certificate of the sale thereof, and shall be vested with the same rights that other purchasers are. * * In case the city shall become the purchaser of any real estate at any tax sale, the treasurer is authorized to sell the certificates issued therefor, for the amount for which said real estate was sold, and

interest, and to indorse and transfer such certificate to the purchaser." The lot then is simply "struck off" to the city, without any money being paid. It is true that the section provides that the city "shall be vested with the same rights that other purchasers are." But the whole section is to be taken together; and no rights are given to the city under it except the mere right to sell the certificate. Until it is sold it remains a mere piece of paper in the possession of the city. The city cannot take a tax deed upon it, at the expiration of the time to recover. It could not be both grantor and grantee in such a deed unless by virtue of some express provision of law authorizing it, and there is no such provision. [Counsel argued further from the several grants of power to the city in the charter, that it had no power to acquire real estate in this way.] The section authorizing the property to be struck off to it, on failure of other bidders, seems clearly to have been passed with this view : that it should not be necessary to keep the tax sale open until some bidder should appear who was willing to take the property, but in form merely the city should become the bidder, with a right to assign the certificate to the purchaser of it, and thereby put him in the same position as if he had attended and bid at the sale. And therefore in such case he becomes vested, *by relation*, with these rights, and they do not pass to him by their once having been vested in the city, and by then having passed under the assignment from the city to him. Where the city is the purchaser, then, there is, in fact, no *satisfaction* of the lien for which the sale is made. When the certificate is afterwards sold by the city for the taxes, charges and interest," there is satisfaction, but not before; and in this case it is alleged in the complaint, and not denied in the answer, that the certificate has, ever since the sale, "remained unredeemed in the possession of said city, and said city has never disposed of the same, or received or collected any money thereon." We have been asked what would be the effect of a redemption of the certifi-

cate by the owner of the property, or the purchase of it by a third person, pending this action. We answer that such redemption or purchase could only be made on payment of the certificate with interest; that such payment would operate at once to discharge the lien; that it could be pleaded in a supplemental answer; and on proof of it the court would dismiss the complaint upon the defendant's paying the costs up to that time, or would render a judgment for the costs merely.

*By the Court*, COLE, J. The question presented in this case is not distinguished from that involved in *Smith vs. Rogers*, and upon which that case turned. It was there held that after the amount of the street commissioner's certificate had been assessed as a tax upon the lot against which it was chargable, and the lot sold at a tax sale, the certificate could not be foreclosed in equity as was provided by chapter 338, Priv. Laws of 1856, and the amendatory act of 1862 (ch. 347, Priv. Laws of 1862); and the reason given was, that the lot could not be twice legally sold to enforce the payment of the same charge upon it. For if the tax sale was valid, the title of the original owner would be divested thereby and become vested in the purchaser at the tax sale; while, in contemplation of law, the sale would discharge and extinguish the lien created by the street commissioner's certificate. In the argument filed on the motion for a rehearing in the Rogers case, the counsel for the respondent admits that these results must follow when an individual buys the property at the tax sale. But he insists the effect is otherwise when the property is bid in by the city at the tax sale in default of other bidders. In that case, he claims, because the city pays upon its bid no money out of which the holder of the street commissioner's certificate can obtain the amount due him, that the lien of that certificate still continues. We have attentively considered the argument upon this point, and confess that it is not satisfactory to our minds. It is obvious the whole argument hinges upon the point, as to what

effect must be given to the tax sale. Does or does not that sale, when regular, divest the title of the original owner in the property ? Where the property at the tax sale is purchased by an individual, it is admitted the title is divested, subject to the right of the original owner to redeem by complying with the statute upon that subject. If he does not redeem within the time limited, and the proceedings have been regular, then the purchaser is entitled to his tax deed, which vests in him an absolute estate in fee simple. Now what is the consequence when the city bids off the property at the tax sale under its charter ? The charter provides that the city shall receive in its corporate name the tax certificate, " and shall be vested with the same rights as other purchasers." Sec. 16, chap. 8, charter, 1852. But it is said this language is not to be understood in its broad signification, because manifestly the city could not take and hold the title under a tax deed. Whether it could or not we consider quite immaterial to the point in issue. For it cannot be denied that " in case the city should become the purchaser of any real estate at any tax sale, the treasurer is authorized to sell the certificates issued therefor for the amount sold, and interest, and to indorse and transfer such certificate to the purchaser," and the assignee is " entitled to receive a deed of such premises in his own name, and with the same effect as though he had been the original purchaser." Sections 15 and 16, chap. 8, charter. This shows most conclusively that the title of the original owner is divested at the tax sale as well where the city bids in the property as where it is purchased by some third party. If the title is divested, if the property is once sold to satisfy the the tax assessed against it, the inevitable legal result must be to extinguish the lien given by the street commissioner's certificate. For to say, not withstanding the sale, that the lien still continues and can be enforced by a subsequent sale, is manifestly giving the first no effect whatever. But it is claimed that the lien is not extinguished when the city bids in the property, because no mon-

ey is paid, out of which the holder of the street commissioner's certificate can obtain the amount due to him. True, the charter does not require the city to pay over the money on its bid. It takes the tax certificate in its corporate name, which the treasurer is authorized to sell and transfer for the amount thereof, and interest, and the holder of the street commissioner's certificate can either take up the tax certificate and obtain · the property through the tax deed, or wait until the city can find a purchaser for such tax certificate. He is not remediless. The law has rendered him all the aid in its power by selling the property for the amount of the lien or tax upon it. He is placed in a position where he can obtain the property upon which his lien existed, and what more can he possibly ask? Suppose property is sold to satisfy a mortgage or judgment, and no one bids at the sale. The creditor takes the property in satisfaction of his debt. So here. Upon the tax sale a plain, ready way is afforded for the holder of the street commissioner's certificate to obtain the property in satisfaction of the amount due him. This, it appears to us, is all that in law or equity can be required, and we see no reason or necessity for any further sale of the property.

But it is further claimed and insisted that the law of 1856, and the amendatory act of 1862, intend to give and do in fact give the holder of the street commissioner's certificate the right to foreclose the same by a suit in equity, even where the special tax has been assessed against the property, and the property sold at the tax sale. I frankly admit that such appears to be the object and design of those acts. They give such holder the right to maintain the action as well where the tax certificate has been assigned under the provisions of the city charter as where the city holds it. No distinction whatever is made. It may be said that the city can transfer the tax certificate to a purchaser only upon being paid the amount due thereon and interest, and that such payment into the city treasury *ipso facto* operates as a payment or redemption of the lien giv

en by the street commissioner's certificate. These laws do not declare that any such effect shall be given to a sale and transfer of the tax certificate. And there would seem to be far less reason for holding that they should have that effect, than for saying that the lien was discharged by a sale of the property upon which it existed, to satisfy this very charge. But to my mind the proposition seems self evident, that property cannot be twice legally sold to enforce the payment of the same lien upon it. For if more than one valid sale can be made, why not an indefinite number? Why may not the legislature as well provide that a party may sell the property a dozen times, as twice? In reason and principle I can perceive no difference in kind, but merely in degree, in the exercise of legislative power in the one case and in the other. Therefore so far as the above cited statutes attempt to give a party the right to bring an action in equity to foreclose the lien created by the street commissioner's certificate, after the special tax has been assessed upon the property, and the property sold to raise this tax, I am constrained to hold them inoperative and void.

The judgment of the circuit court, holding that the complaint stated no cause of action, and dismissing the action, is affirmed.