**DICKINSON, County Treasurer, et al. v. TIDD et al.**

No. 2711.

Circuit Court of Appeals, Tenth Circuit.

Aug. 5, 1943.

Geo. Bingaman, of Purcell, Okl. (Ray G. Wilson, of Purcell, Okl., on the brief), for appellants.

Solon W. Smith, of Oklahoma City, Okl. (James S. Twyford and William J. Crowe, both of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Purcell, Oklahoma, is a city of the first class, organized under a municipal charter adopted in accordance with Article 18, Section 3(a) of the Constitution of the State of Oklahoma. The city created a street improvement district, levied benefit assessments against the property therein, and issued bonds to pay for the cost of the improvements. Certain installments against some of the property were not paid. The city clerk certified the delinquencies to the county treasurer, who placed the lots liable for such assessments on the delinquent tax list. At the November, 1935 tax sale, they were sold for both delinquent ad valorem taxes and delinquent special assessments. No one bid the required amount and they were accordingly bid in by the treasurer in the name of the county. At the regular tax resale, held in 1938, they were resold for both delinquent general taxes and special assessments. Again no one bid the required amount and they were bid off in the name of the chairman of the Board of County Commissioners and a statutory tax resale deed was issued to him and his successors in office.

Appellees, the owners of some of the bonds that have not been paid, instituted

this action, alleging that the resale proceedings were void for defects in the notices of sale and for the further reason that there was no statutory authority for the sale of the lots at resale for delinquent installments of special assessments. Appellees sought a decree determining that the resale did not extinguish the lien of delinquent special assessments and reforming the deeds to recite that they were subject to such assessments. This appeal is taken from a decree granting the relief prayed for.

While the court did not pass directly upon the validity of the tax sale notices, their invalidity is urged as a ground in support of the decision, and it is therefore necessary to consider them. Title 68 O.S.A. § 382 provides that the notice shall contain a notification "that all lands on which the taxes of such fiscal year remain due and unpaid will be sold, and of the time and place of the sale, and shall contain a list of the lands to be sold and the amount of taxes due." The notice in question bore the caption: "Notice of Sale for Delinquent Taxes for Years of 1933 and 1934." It stated that the property listed would be sold for the unpaid taxes for 1933 and 1934. It set out a description of the lots and lands to be sold, followed by a statement of the general taxes due on each lot. Following the listing of the general taxes, the notice listed paving taxes with respect to the various lots, in a manner of which the following is typical: "List of Paving Tax—City of Purcell, District No. 2. Lot 6 blk 48, 1923 $136.50, 1924 $148.66, 1925 $134.04, 1926 $199.88, 1927 $106.50, 1928 $94.11, 1929 $82.03, 1930 $70.94, 1931 $10.62, 1932 $51.15, total $1,004.43."

▮ It will be noted that the caption of the notice does not comport with the description of the paving taxes for which the property was sold in the latter part of the notice, the paving taxes listed being for the years 1923 to 1932, inclusive, while the caption refers only to delinquent taxes for 1933 and 1934. The sufficiency of the notice cannot, however, be determined from the caption alone. It must be read and considered in its entirety. When so read and considered, we have no difficulty in reaching the conclusion that it is valid, and that any defects are mere irregularities. In Chamberlain v. Davis, Okl.Sup., 130 P.2d 848, the notice of resale stated that the property was being sold to satisfy delinquent taxes for the years 1932 to 1935, in-

clusive. There were no 1933 delinquent taxes. In Henshaw v. Morris, 189 Okl. 603, 119 P.2d 85, property was sold in 1927 and resold in 1931. The resale notice stated that the property had been sold in 1928, not in 1927. In each case the Oklahoma Supreme Court held that the mistake was an irregularity and did not affect the validity of the sale.

▮ The validity of the resale notice is also challenged. 68 O.S.A. § 432b provides that the notice shall contain "a description of the real estate to be sold, the name of the owner of said real estate as shown by the last tax rolls in the office of the County Treasurer * * *." The main attack levied at this notice is that it gave the name of the record owner rather than the last owner as shown by the tax rolls. In Swearingen v. McCarten, 186 Okl. 241, 96 P. 2d 1061, the notice of resale failed entirely to give the name of the owner. The tax rolls failed to give the name of any owner. The court sustained the validity of the sale. There is no showing here that there is a discrepancy in the ownership as shown by the record with that of the tax rolls. The defect is at most an irregularity, which, in our opinion, does not affect the validity of the sale.

A more serious question is whether these special assessments are subject to resale and if they are, whether the resale extinguishes the lien.

▮ It is well settled in Oklahoma that a municipal charter adopted in accordance with Art. 18, Sec. 3(a) of the constitution becomes the organic law of the municipality and that its provisions supersede all laws of the state in conflict with it relating to purely municipal matters.

▮ As already pointed out, Purcell expressly adopted Section 722, Art. 5, Ch. 14, Compiled Laws of Oklahoma, 1909, being Art. 1, Ch. 10 of the Session Laws of 1907–08, relating to street improvements. These statutory provisions thus became the organic law of the city. They were in force at the time the bonds in question were issued, became a part of the contract, and the rights of the parties must be gauged by them.

Appellees' position is that there is no authority in these statutory provisions authorizing the county treasurer to sell at resale property subject to delinquent assessments for benefit improvements.

Art. 1, Ch. 10 of the Oklahoma Session Laws of 1907–08 provides a comprehensive method for the improvement of streets and other public places within cities of the first class, for the creation of benefit districts, the assessment of benefits, and for the payment and collection of such assessments. It is especially provided that the city clerk shall promptly certify delinquent installments of assessments to the county treasurer, who is directed to place the same upon the delinquent tax list of the county for the current year, and collect them as other delinquent taxes are collected, and then pay the proceeds to the city treasurer for proper disbursement.

Oklahoma also had at the time these bonds were issued a complete and comprehensive system for the collection of delinquent taxes.[1] In general, it provided for the November sale,[2] and for a resale where the property was bid in by the county and not redeemed within the statutory period of time. While the 1909 Act omitted the provision for the issuance of a resale tax deed, the Oklahoma Supreme Court has held that the provision for such a deed in a prior law was not repealed by the 1909 Act and was in full force and effect. McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711, 714.

■ When the organic law of the city directed the city clerk to certify the delinquent assessments to the county treasurer and directed him to place them on the delinquent tax list and collect them as he did other taxes, it in effect directed him to take the same steps for the collection of these assessments as he did in the collection of other taxes. This included offering the property for sale in November for these delinquent assessments, and if no one bid the required amount, then to bid the property off in the name of the county, and if no redemption was made, then at the proper time offer and sell it at resale and issue a resale tax deed to the purchaser. The whole purpose of these directions to the county treasurer was to collect the delinquent assessments by the creation of a fund resulting from the sale of the property subject thereto. If the county treasurer lacked authority to sell at resale and give a deed, the whole purpose of the statute would be defeated, because no fund could be created. It was expressly held in Prince v. Ypsilanti, 140 Okl. 131, 282 P. 282, and McGrath v. Oklahoma City, supra, that the county treasurer had authority to sell at resale property subject to delinquent assessments and to issue a resale tax deed to the purchaser. The bonds in each of these cases were issued under and pursuant to the same law we have under consideration here. The cases are therefore directly in point, and the decisions by the Supreme Court of Oklahoma are controlling and determinative of this question in the case before us. The Supreme Court of Oklahoma in both the Prince and McGrath cases, supra, considered and interpreted the effect and meaning of the language in the law which says that the lien of special assessments should continue as to unpaid installments and interest until such assessments shall be fully paid. It was held that this language meant no more than that the lien of such assessment was co-equal with that of other taxes and that it was extinguished by a valid tax sale.

■ We have no difficulty in concluding that where property is sold at resale for the satisfaction of delinquent assessments to a bona fide purchaser who pays value for it, and a resale tax deed is issued to him, the lien of such assessments is extinguished and he takes the property free from such lien. Thereafter the holders of the bonds must look to the fund resulting from such sale for the satisfaction of their bonds.

■ The question is more difficult when, as here, the county is the purchaser and the recipient of a resale tax deed at such sale for the want of a bona fide, qualified bidder under the law. In such a case, no fund is created to be applied in satisfaction of the bonds. But it is nevertheless a sale, and it is difficult to see how a lien can continue when the property subject thereto has once been sold for its satisfaction and a deed has been issued. To so hold would be to give the sale no effect and would mean that further similar sales must be held for the same purpose for which the first sale was held. Our attention has not been directed to any Oklahoma decision, and our search has failed to reveal any, in which the precise question has been squarely passed upon by the Oklahoma courts. Prince v. Ypsilanti, supra, touches upon the proposition, but it does not clearly appear

---

[1] House Bill No. 168, Ch. 38, approved March 10, 1909.

[2] The date of the sale was changed to November by amendment effective June 17, 1910.

whether the facts were the same as in this case. The court quotes with apparent approval decisions from other states holding that such a sale extinguishes the lien. At page 287 of the opinion in 282 P. the court says: "There is authority from other states which hold[s] that the sale to the county extinguished the lien of the special assessment."

The court then quotes 44 C.J. 805, and Smith v. Vandyke et al., 17 Wis. 208, and Smith v. Ludington, 17 Wis. 334, 335. The last two mentioned cases are directly in point. Smith v. Ludington is a well reasoned case. The court said: "If the title is divested, if the property is once sold to satisfy the tax assessed against it, the inevitable legal result must be to extinguish the lien given by the street commissioner's certificate. For to say, notwithstanding the sale, that the lien still continues and can be enforced by a subsequent sale, is manifestly giving the first no effect whatever. But it is claimed that the lien is not extinguished when the city bids in the property, because no money is paid, out of which the holder of the street commissioner's certificate can obtain the amount due to him. True, the charter does not require the city to pay over the money on its bid. It takes the tax certificate in its corporate name, which the treasurer is authorized to sell and transfer for the amount thereof, and interest, and the holder of the street commissioner's certificate can neither [3] take up the tax certificate and obtain the property through the tax deed, or wait until the city can find a purchaser for such tax certificate. He is not remediless. The law has rendered him all the aid in its power by selling the property for the amount of the lien or tax upon it. He is placed in a position where he can obtain the property upon which his lien existed, and what more can he possibly ask? Suppose property is sold to satisfy a mortgage or judgment, and no one bids at the sale. The creditor takes the property in satisfaction of his debt. So here. Upon the tax sale a plain, ready way is afforded for the holder of the street commissioner's certificate to obtain the property in satisfaction of the amount due him. This, it appears to us, is all that in law or equity can be required, and we see no reason or necessity for any further sale of the property."

■ The fact that no fund was realized from a resale at which the county was compelled to purchase the property by law for want of qualified bidders did not deprive the bondholders of the benefit of their security nor deny them due process of law. In State v. Stacy, 10 Wash.2d 248, 116 P. 2d 356, 358, 359, the court said: "It is now settled law in this state that, when a county purchases land at a general tax foreclosure sale for want of other purchasers, the county takes and holds the land not in its proprietary capacity, but in trust for the state and the various taxing municipalities within which the land lies."

The court further said: "It is equally well settled that a resale of land by the county is but a part of the statutory tax collecting process, which is not complete until such resale is finally made by the county, to the end that the proceeds thereof shall be justly apportioned to the various funds entitled thereto."

In Finney et al. v. City of Oshkosh, 18 Wis. 209, it was held that where the city was compelled to bid in lots at a tax sale in the absence of any other bidders, it held the tax certificate as trustee for the benefit of the person to whom such assessment was due, and would become liable only in case it should sell the tax certificate to collect the amount due on it.

Section 432j, 68 O.S.A. provides for the sale by the county of all property acquired by it at resale. Section 432l provides for the distribution of the proceeds of such ultimate sale among all funds, including special improvement tax funds where there are such assessments.

■■ The bondholders had two remedies available for the payment of their bonds when they became past due. They could bid in the property at the November tax sale or later at the resale tax sale, or they could wait, as they did, and look to the fund to result from the ultimate sale of the lots for the liquidation of their claims. The acquisition of the property by the county at a resale is but another step in the process of collecting delinquent taxes by the creation of a fund through the sale of the property. The county treasurer at all times acts merely as a collecting agency. When in this process the county is compelled to purchase the property at the resale, it takes title as trustee for those entitled to the funds when the property is ultimately sold.

---

[3] The word "neither" is evidently a misprint, and "either" is the word which was intended.

We conclude that after the resale and the issuance of a resale tax deed, whether to the county or to a private purchaser, all liens for taxes for which the sale was held are extinguished.

Reversed and remanded with directions to dismiss the action.