## FRANKLIN SECURITIES CO. v. CLAY et al.

No. 19674. Opinion Filed Nov. 25, 1930.

Orr & Rust, for plaintiff in error.

Charles Skalnik, for defendant in error Dawson Tax Company.

HERR, C. This is an action originally brought in the district court of Tulsa county by Franklin Securities Company against Allen P. Clay, Dawson Tax Company, and others, to foreclose a lien alleged to have been created by the issue of tax bills by the city of Tulsa against certain lots in

said city to pay for the cost of street improvements. Defendant Dawson Tax Company pleaded ownership of the premises by virtue of a tax deed issued and delivered to it by the county treasurer of said county. Defendant alleges that the premises were sold at a tax sale for delinquent ad valorem taxes, and that, by virtue of its tax deed, it acquired title superior and paramount to any right, title, or lien of plaintiff under its tax bills. The other defendants, except defendant Clay, who made no defense, answered, setting up various liens claimed by them against the premises, which liens they allege to be superior to the title of defendant Dawson Tax Company, and the lien of plaintiff. The trial court found for defendant Dawson Tax Company, holding its title paramount and superior to the lien of plaintiff under its tax bills, and superior to the liens claimed by the other defendants and rendered judgment accordingly. Plaintiff Franklin Securities Company appeals.

It is assigned as error that the judgment is contrary to law. The streets of the city of Tulsa, upon which the lots here involved abutted, were paved and otherwise improved, and the tax bills in question were issued by the city of Tulsa under its charter to the contractor in payment of these improvements. The tax bills were subsequently sold and assigned by him to plaintiff herein, who brought proceedings in the district court of Tulsa county to foreclose the lien thereby created.

The question here involved is, Is the lien of the state for ad valorem taxes superior to the lien acquired by the contractor under his tax bills? In our opinion, this question must be answered in the affirmative, for the reason that the charter of the city of Tulsa and its assessment ordinance so provide. It must be remembered that the improvements and assessments here involved were not made under the general state law, but were made and had under the city charter of the city of Tulsa. Tax bills were issued under the charter and in conformity with the assessment ordinance passed in pursuance thereof. The charter, among other things, provides:

"The costs of any such improvements assessed against any property, together with all costs and reasonable expenses in collecting the same, including reasonable attorney's fees, when incurred, shall be secured by a lien upon such property superior to all other liens, claims, or title, except city, county, and state taxes, and such lien may be enforced either by suit in any court of competent jurisdiction, or by sale in the same manner, as far as applicable, as sales are authorized to be made by the city of Tulsa for the nonpayment of taxes; provided, that it shall not be necessary to sell at the same time as for delinquent ad valorem taxes, and the board may by resolution or ordinance make such rules and regulations, not inconsistent with the charter, as it may deem necessary to provide for the speedy collection of such assessment for improvements."

The assessment ordinance in the instant case contains the following provision:

"That the assessments hereby levied against each of the above described lots and parcels of land shall bear interest at the rate of seven per centum (7%) per annum, and both principal and interest are hereby declared to be a debt against the owners of the land, and a lien upon such lots and parcels of land prior to all other liens, except the lien for state, county, and city taxes, from this date, and the same shall be enforced and collected as other taxes in the city of Tulsa, Okla., are enforced and collected, or may be recovered and the lien enforced by appropriate judicial proceedings."

It will be noted that the charter, as well as the assessment ordinance, makes the lien for street paving and other street improvements subordinate to the lien for city, county, and state taxes. This charter provision, as well as the proceedings thereunder, has been held valid and sustained by this court in the case of M., K. &. T. Ry. v. City of Tulsa, 113 Okla. 21, 238 Pac. 452. It is there held that the city, in improving its streets, may follow either the procedure therein provided or the procedure provided by state statute; that the proceedings are cumulative. In the body of the opinion, it is said:

"The ordinance thus expressly excepts the liens created by general statutes for securing the collection of delinquent state, county, and municipal taxes, and does not conflict with the general statutes which create a first lien upon real estate for the collection of state, county, and municipal taxes, nor conflict with the procedure provided by statute for enforcement of such liens, nor interfere with the superior powers of the state in the enforcement of any liens over which the state has assumed sovereign control. On the contrary, the ordinance clearly recognizes the supremacy of state laws over municipal laws in matters over which the state has assumed to exercise a sovereign control. * * *

"While the statutes do provide a procedure for the enforcement of tax liens, including assessments for city improvements, yet they do not provide that such remedy shall be exclusive, and, inasmuch as the ordinance in question recognizes the superior power of

the state to enforce its liens first, and to provide the procedure for enforcement of same, such ordinance, though providing a different remedy, has no further effect than merely to provide a cumulative remedy for the enforcement of assessment liens, the ordinance not attempting to make such remedy exclusive. It does not compel the owner of a 'tax bill' to resort to this remedy, but merely grants him authority to do so. The owner of a 'tax bill' or 'certificate of assessment,' of the character here involved, may avail himself of either the procedure provided by general statutes for the enforcement of his lien, viz., by having the proper city officials to certify same to the county treasurer, where his lien may be enforced as provided by general law for the collection of delinquent taxes on real estate, by sale, by the county treasurer, or he may adopt the procedure authorized by the city ordinance, which, at most, is no more than a cumulative remedy, neither remedy being made exclusive."

The state statute, to the effect that liens of this character are co-equal, has no application to the instant case for the reason that the entire proceedings were had and taken under the city charter. The assessments made thereunder have at no time been certified to the county treasurer of Tulsa county for collection, but, in lieu thereof, tax bills were issued and delivered to the contractor. There was no authority in the county treasurer, under the proceedings here taken, to sell the property for failure to pay delinquent special assessments. The charter and assessment ordinance make the costs of street improvements a lien against the lots abutting upon the improved street, subordinate to the lien of the state for general taxes, and tax bills may be issued thereunder against the premises to pay the cost thereof, and the lien thereby created may be foreclosed in the district court. This procedure was followed in the instant case.

The statute of the state of Washington relative to street improvements is very similar to the charter of the city of Tulsa, in this respect, and thereunder the Supreme Court of that state holds that the lien of the state for general taxes is superior to that of the city for local improvements. The rule is stated as follows in the syllabus in the case of Keene v. City of Seattle (Wash.) 71 Pac. 769:

"Laws 1893, p. 167, c. 71, sec. 8, permitting cities of the first class to certify special assessments to the county treasurer, and providing that the same shall be a part of the tax due on such property, and with interest shall be collected as other taxes, and all other proceedings shall be taken as if it were originally a part of the general tax against such property, does not place such special assessments for local improvements on an equality with general taxes; such not having been the intent of the Legislature, as evidenced by Laws 1901, p. 240, c. 118, sec. 1, providing, in reference to special assessments, that the lien thereof shall be superior to any other lien whatsoever except a lien for general taxes."

To the same effect is the case of White v. Knowlton (Minn.) 86 N. W. 765. It is there said:

"The city is given ample power by its charter to levy and enforce local assessments, which are made a paramount lien on the real estate on which the same may be imposed from the date of the warrant issued for the collection thereof, subject, however, to the lien of the state for all taxes which have been or may be levied upon such property under the general laws of the state. Sp. Laws 1887, c. 7, subc. 7, secs. 34, 47. The specific language of such exception is this: 'Provided that nothing in this act contained shall be construed to affect or prejudice the lien of the state for all taxes which have been or may be levied upon such property under the general laws of the state.' The purpose of this proviso lies so clearly upon its face that no question of construction can arise. Its meaning is just what the words used import; that is, that the lien for a local assessment is subordinate to the lien of the state for taxes levied under the general laws of the state, without reference to the time when the lien of the state accrues."

Plaintiff relies upon the case of Moore v. Otis, 275 Fed. 747; Perryman v. City Home Builders, 121 Okla. 150, 248 Pac. 605; Nelson v. Pitts, 126 Okla. 191, 259 Pac. 533. These cases are not applicable, for the reason that they deal with the state statute and assessments made thereunder. The city of Tulsa chose not to follow the procedure therein provided, but proceeded under a different method as authorized by its city charter. The contractor saw fit to accept the tax bills under this charter and assessment ordinance passed in pursuance thereof. This charter and ordinance, in effect, provide that the lien thereby created is subordinate to the lien of the state for general taxes. The contractor, having accepted these tax bills, is bound by the terms of the charter and ordinance under which they were issued, and plaintiff, under its assignment, could acquire no greater rights than the contractor had. It, therefore, follows that section 53, article 5, of the Constitution of the state, discussed and relied upon by plaintiff, is without application.

This court, in the case of M., K. & T. Ry.

v. City of Tulsa, supra, after a lengthy discussion of the charter provision of said city herein discussed concludes as follows:

"Wherefore, we hold that while the district court had jurisdiction over the subject-matter, yet we hold that it erred in its judgment, by decreeing the lien in question to be a prior and superior lien to all other liens or claims whatsoever, and by not decreeing such lien to be subject to any and all liens which the state might have had against the property in question."

The owner of the lots in question failed to pay the ad valorem taxes assessed against the same. They were properly sold for delinquent ad valorem taxes and a tax deed issued to defendant Dawson Tax Company. The regularity of the proceedings and the tax deed is not assailed. The Dawson Tax Company, therefore, at the sale for taxes, took not only the title of the owner, but thereby took a new and independent title superior and paramount to the lien created by the tax bills.

In vol. 26 R. C. L., at page 401, the following rule is announced:

"It is held in most jurisdictions that the title conveyed by a sale for nonpayment of taxes is not merely the title of the person who had been assessed for the taxes and had neglected to pay them, but a new and paramount title to the land in fee simple absolute created by an independent grant from the sovereign and free from all equities and incumbrances existing prior to the sale upon the title of the previous owner. Under this view, the sale extinguishes all prior incumbrances on the land or interests in it, though held by persons who were not liable for the tax or in default for not paying it, such as the lien of pre-existing mortgages, and judgments, landlord's liens, and inchoate rights of dower."

In the absence of constitutional or statutory enactment to the contrary, the above rule is quite universally followed by the courts of this country. Under this rule, taken in connection with the city charter and assessment ordinance here involved, the sale of the premises in question for delinquent ad valorem taxes extinguished plaintiff's lien under its tax bills, and the trial court ruled correctly in so holding.

Judgment should be affirmed.

TEEHEE, HALL, DIFFENDAFFER, REID, and LEACH, Commissioners, concur.

By the Court: It is so ordered.