McGRATH v. RAUCH et al.

No. 32022. Dec. 10, 1946.

Rehearing Denied Jan. 28, 1947.

*176 P. 2d 824.*

· Roscoe Bell, of Oklahoma City, for plaintiff in error.

Everest, McKenzie & Gibbens, of Oklahoma City, for defendant in error L. M. Rauch.

RILEY, J. This is an appeal from a judgment and decree quieting title in defendant in error, L. M. Rauch, to lots 1 and 2, block 12, Capitol Hill addition to Oklahoma City, and lots 5, 6, 7, and 8, block 29, Military Park addition to Oklahoma City.

This action was commenced by defendant in error, L. M. Rauch, hereinafter referred to as plaintiff, against Joseph N. McGrath, Wm. F. Vahlberg, county treasurer, the board of county commissioners of Oklahoma county, and other defendants. Defendants Joseph N. McGrath, the county treasurer, and the board of county·commissioners answered. All other defendants made default. Trial of the issues resulted in a judgment and decree in favor of plaintiff; defendant Joseph N. McGrath appeals.

Plaintiff claims title to the Military Park lots based on a resale tax deed, dated May 27, 1942, issued after resale held May 5, 1942. He claims title to the Capitol Hill lots by virtue of a resale tax deed, dated May 28, 1942, issued after resale held May 14, 1942. O. L. Simpson purchased at resale and quitclaimed to plaintiff. Both resales were based on tax sale to the county in 1936, for delinquent ad valorem and special improvement taxes. Some of these latter go back as far as 1911 or 1912. Plaintiff asserted a claim of title under resale tax deed issued under the 1941 resale. But at the trial he admitted the invalidity of the 1941 resale tax deeds and admitted that he had received from the county treasurer the amount paid for such deeds, and testified that he had given a deed back to the county commissioners.

Defendant McGrath claims title to the Capitol Hill lots by virtue of a resale tax deed dated June 28, 1929, to James Coakley, and subsequent quitclaim deed from Coakley to defendant McGrath. He claims title to the Military Park lots

under a resale tax deed to M. McGrath, dated June 16, 1924, and subsequent quitclaim deed from M. McGrath to defendant Joseph N. McGrath. Defendant McGrath asserts the invalidity of plaintiff's 1942 resale tax deeds upon the ground that the lots were advertised and sold at resale for much more than the valid delinquent taxes and special assessments against the lots. As to the Capitol Hill lots, he alleges that paving taxes were first levied by a city ordinance, July 24, 1911, and that all such paving assessments had matured in 1921 and were canceled by the resale tax deed issued to Coakley; and that in December, 1910, special grading taxes were levied by city ordinance to pay bonds issued thereunder and that all of the unpaid installments of the assessments thereunder had fully matured and were also canceled by the resale to Coakley.

As to the Military Park lots, defendant McGrath assails plaintiff's resale tax deed upon the ground that all paving taxes against said lots were levied by city ordinance passed May 16, 1911, and the installments levied thereunder all matured in 1920 and were canceled by the resale deed to M. McGrath in 1924.

On February 18, 1944, there came on for hearing before the court a motion of defendant McGrath to strike the reply of plaintiff to defendant's answer and amended answer and the answer of plaintiff to the cross-petition of defendant McGrath. At the same time there came on for hearing an application of plaintiff to require defendant McGrath to make tender of all taxes, penalties, interest, and costs.

Upon hearing, the court denied the motion of defendant McGrath to strike, and ordered that said defendant be required to tender all taxes, penalties, interest, and costs required by law before proceeding on answer and cross-petition. The matter of the amount required to be tendered was taken under advisement and the parties were given 15 days in which to agree upon and submit to the court the amount of such delinquent taxes, etc., which the law required to be tendered. The parties were apparently unable to agree, and thereafter, on March 4, 1944, defendant McGrath filed a reply to the answer of plaintiff to defendant's cross-petition, wherein he asserted that on the date of the 1942 resale there were no delinquent taxes, penalties, interest, or costs due on the Military Park lots except the last quarter of the 1940 taxes and all the 1941 taxes. Therein he tendered only the 1941 taxes and the last quarter of the 1940 taxes. As to the Capitol Hill lots, he denied that there was more than $369.86 delinquent taxes, penalties, and costs on the date of the 1942 resale, and claimed $200 credit thereon on account of redemption of a resale of said lots in 1939 wherein said lots had been sold at resale to one D. G. Johnson. He tendered and offered to pay the sum of $169.86 and that only upon condition that judgment be rendered in his favor.

On the same day, plaintiff filed a motion to strike all the pleadings of defendant McGrath for failure and refusal of said defendant to make tender of all delinquent taxes, penalties, interest, and costs which he would be required to pay under the law. Defendant McGrath filed a response to said motion, wherein he requested a determination of the amount to be tendered. For this purpose a hearing was had and the court found that as to the Capitol Hill lots there was due and unpaid delinquent ad valorem taxes and special assessments (which had accrued on different dates from 1911 to 1941) at the date of the 1942 resale in the total sum of $2,235.03, and subsequent taxes in the sum of $74.19, making a total of $2,309.22. As to the Military Park lots, the court found delinquent ad valorem and special improvement taxes, for the years 1913 to 1941, on lots 5 and 6, and on lot 7 from 1911 to 1941, and on lot 8 from 1912 to 1941, all amounting to $4,290.97, and subsequent taxes in the sum of $70.76, making a total due on the Military Park lots on the date of

the 1941 resale, of $4,361.73; or a grand total of delinquent taxes, etc., against all of the lots in the sum of $6,670.95. Thereupon, on March 31, 1944, the court ordered that defendant McGrath within ten days, tender the sum of $6,670.95.

McGrath, instead of making the tender ordered by the court, filed amended reply in which he again asserted that all he should be required to tender was the last quarter of the 1940 and all the 1941 taxes. This did not include the taxes accrued subsequent to the 1942 resale. Having failed and refused to make the tender required by the court, McGrath's pleadings were all stricken.

On April 24, 1944, hearing was had on plaintiff's petition to quiet title, resulting in a finding and decree in favor of plaintiff and quieting his title to all of said lots, and holding valid both his 1941 and 1942 resale deeds.

McGrath contends that as to the Capitol Hill lots all the special assessments were canceled by the 1929 resale to Coakley; he asserts that the 1929 resale tax deed was issued under the law as set forth in Nix v. Reynolds, 193 Okla. 15, 141 P. 2d 86.

The law in Nix v. Reynolds, supra, is materially different from the law applicable to the 1929 resale relied upon by defendant. In the Nix Case, supra, the special improvement proceedings were under the charter of the city of Tulsa, while the proceedings here involved were under the state statutes. That they are materially different is shown by Franklin Securities Co. v. Clay et al., 146 Okla. 102, 293 P. 529. Moreover, the 1929 resale tax deed to Coakley expressly recites that the resale to Coakley is "subject to paving and all special taxes". In McGrath v. Oklahoma City, 156 Okla. 34, 9 P. 2d 711, it is said:

"If the sale is alone for delinquent ad valorem taxes, a lien for those taxes is discharged by the sale and a lien for paving purposes is not affected thereby. If the sale is alone for a delinquent installment of an assessment for paving purposes, a lien for the delinquent installment for which the sale is made is discharged by the sale and a lien for ad valorem taxes is not affected thereby. If the sale is for delinquent ad valorem taxes and a delinquent installment of an assessment for paving purposes, both liens are discharged by the sale."

This court has re-affirmed that rule. No ad valorem taxes were paid on the lots after the 1929 resale to Coakley. Therefore, all the ad valorem taxes against the lots, from 1929 to 1941, were delinquent. As shown by the books of the county treasurer, there existed $2,235.03 delinquent taxes, penalties, interest, and costs against the lots when they were advertised for resale in 1942 and that was the amount shown in the notice of sale. At the time of trial there had accumulated an additional tax of $74.19.

A similar state of facts was shown as to the Military Park lots. Special grading and paving assessments existed against the lots as far back as 1911. None of the installments due after 1912 were paid. The 1924 resale deed to M. McGrath also contained the recital that the sale to McGrath was subject to paving and special assessments. Likewise, there were ad valorem taxes unpaid from 1924 to 1941. The county treasurer's records showed $4,290.97 against the lots when they were advertised for resale in 1942 and that was the amount shown in the notice of sale. The subsequent taxes amounted to $70.76.

Under 68 O.S. 1941 §453,455, where the former owner contests the validity of a resale tax deed, he must tender all delinquent taxes, penalties, interest, and costs against the land in order to maintain or defend an action based upon such deed. The tender made by defendant McGrath was insufficient. The trial court did not err in striking his pleadings after his failure to make the tender required by law.

McGrath claims credit on the delinquent taxes as to the Capitol Hill lots

by reason of the redemption by him from the 1939 resale, under section 14 of the 1939 resale law, the provisions of which gave the owner of record the right to redeem at any time prior to December 1, 1939, by paying the amount paid by the purchaser at the resale. If he was entitled to that credit, it was for only $200, which would leave his tender more than $6,000 less than the amount required by law. But under section 14 of the 1939 resale act, where the land was redeemed, it placed title in the owner in the same status as though no such resale had been had. But section 6 of the 1939 resale act (S. L. 1939, p. 548) provides:

"Money received by the county treasurer at resale from individual purchasers, not redemptioners, shall nevertheless be deemed to be collection of taxes . . ."

—and further provides:

"In instances where vacant lots are offered for sale for both ad valorem taxes and special improvement taxes but are sold for less than the total sum due, the county treasurer shall, after deducting the listing fees and publication fees, apportion the proceeds of such sale ratably between the ad valorem and special improvement tax accounts in the same ratio such proceeds bear to the total tax published as due for such sale."

It was stipulated that all properties involved were vacant lots.

The record in this case does not disclose whether the county treasurer made such apportionments, but the presumption is the he complied with the law. Then the $200 paid by D. G. Johnson, the purchaser at the 1939 resale, was apportioned by the county treasurer as required by law. Credit had already been given on the tax rolls for that $200. Therefore, the redemption money paid by defendant McGrath was not the payment of the taxes but was made to reimburse D. G. Johnson for the amount which he had paid for the lots at resale. Therefore, defendant was not entitled to the credit of $200 as claimed by him.

The 1942 resale tax deeds of plaintiff appear to be regular in form; the proceedings leading up to the resale appear to be regular.

The judgment quieting plaintiff's title, based upon the 1942 resale deeds, is affirmed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur.